**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW JERSEY**

_____

HAIR ZONE, INC.,                          :
                                          :
                                          :
                          Plaintiff,      :        Civil Action No.:
                                          :
v.                                        :
                                          :
                                          :    **VERIFIED COMPLAINT**
JOON HAN BAE (a/k/a CLINTON BAE);         :
DAE DO INC. (d/b/a Vivace); JOHN          :
DOES 1-5; and ABC CORPS. 1-5,             :
                                          :
                                          :
                          Defendants.     :
_____

Hair Zone, Inc. ("Hair Zone"), by way of Verified Complaint, through its attorneys Epstein

Becker & Green, P.C., alleges claims against Joon Han Bae, also known as Clinton Bae ("Bae"),

and Dae Do Inc. (d/b/a Vivace) ("Dae Do") as follows:

**SUMMARY OF ACTION**

1.      Hair Zone brings this action to preserve its trade secrets, valuable confidential and

proprietary information, and other protectable business assets that defendant Bae stole from Hair

Zone shortly before his voluntary resignation and brought to his new employer, Dae Do, a start-

up company who intends to compete with Hair Zone in the wigs and hair products industry.

2.      Unbeknownst to Hair Zone, in the days leading up to and following Bae's January

11, 2023 announcement to Hair Zone that he would be voluntarily resigning, Bae stole files from

Hair Zone containing Hair Zone confidential information and trade secrets, including but not

limited to Hair Zone's **entire** global customer list.

3.      Specifically, shortly before his departure from Hair Zone and notwithstanding

Bae's contractual and legal obligations to Hair Zone, Bae chose specific files to take from Hair

Zone.  He then actually took those files by e-mailing them from his work e-mail account to his personal e-mail account, clintonbae@gmail.com.

4.     Bae transferred, and now possesses, Hair Zone trade secret and confidential information regarding Hair Zone's customers (both active and inactive), sales strategies, sales goals, margins, pricing information, business plans, and new product descriptions, any of which would provide invaluable competitive information to Bae or any third party in the field, enabling them to unfairly compete with Hair Zone.

5.     Most concerning is the fact that, in addition to misappropriating other trade secrets and confidential information of Hair Zone, in the weeks leading up to his departure from Hair Zone, Bae stole from Hair Zone its entire list of customers (both active and inactive).  As Bae had responsibility for only the New Jersey sales region at the time of his departure, he would have had no legitimate business reason to possess Hair Zone's entire customer list, which also contains other trade secret information, such as confidential pricing information, customer credit risk levels, terms of payment, and credit limits.

6.     Bae's conduct is especially troublesome because Hair Zone recently learned that Bae has accepted a sales position with Dae Do, a start-up competitor in the same field. Without immediate injunctive relief, Dae Do, who intends to compete with Hair Zone in the wigs and hair accessories space who has announced that it intends to begin marketing its products in July 2023, will be in a position to use such information and data, and at a minimum is unjustly enriched by it and by the compensation Bae received during his period as a faithless and conflicted employee in breach of his duty of loyalty and other obligations to Hair Zone.

7.     In addition to violating federal and state laws, Bae's conduct violates the Confidentiality Agreement (the "Agreement") that he entered into with Hair Zone.  A true copy of the Agreement is attached hereto as Exhibit 1.

8.     Bae's continued, post-employment possession of Hair Zone's trade secrets and confidential information, combined with his current employment with Dae Do, a direct competitor of Hair Zone that is planning to enter the wig and hair accessory market in July 2023, places both Dae Do and Bae in a position to use or disclose such information.

9.     Bae and Dae Do's attempts to access Hair Zone's information goes beyond the theft of Hair Zone's trade secrets and confidential information.  As Dae Do gets closer to entering the hair products market, Dae Do and Bae have only increased their attempts to access Hair Zone's customer information: during approximately the past ten days, Bae, as Dae Do's sales leader, has contacted at least two Hair Zone sales employees in an effort to gain access to the names, contact information, and other confidential information for Hair Zone's top ten customers in specific states, namely Michigan and Ohio.

10.     Thus, in addition to ultimate relief, Hair Zone seeks immediate temporary and preliminary relief against Dae Do and Bae.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the controversy and personal jurisdiction over the parties under 18 U.S.C. 1836(b), for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016.

12.     This Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 of all other claims that do not arise under the Constitution, laws, or treaties of the United States.

13.     Venue is proper within this district based on 28 U.S.C. § 1391 in that defendant Bae resides in Little Ferry, New Jersey.

## PARTIES

14.     Hair Zone is a corporation duly organized under the laws of the State of New Jersey and maintains its principal place of business at 10 State Street, Moonachie, New Jersey 07074.

15.     Hair Zone produces and distributes its products worldwide under the brand name SENSATIONNEL®.

16.     Hair Zone is a leading provider of hair products, including hairpieces, braids, weaves, extensions, accessories, and designer wigs.

17.     Hair Zone serves customers throughout the United States.

18.     Defendant Joon Han Bae ("Bae") is an individual who is a former employee of Hair Zone and whose last known address is 58 Main Street, Apt. 25, Little Ferry, New Jersey 07643.

19.     Bae was employed by Hair Zone from June 13, 2007 until he announced his voluntarily resignation from Hair Zone on January 11, 2023, effective February 17, 2023.

20.     Following his resignation from Hair Zone, Bae accepted employment with Dae Do Inc., d/b/a Vivace, a corporation organized under the laws of New York, and upon information and belief, maintains its principal place of business at 456 Sylvan Avenue, Suite #101, Englewood Cliffs, New Jersey 07632.

21.     Dae Do is a start-up competitor of Hair Zone that specializes in hair products, including weaves, wigs, braids, and hair pieces.

22.     According to an industry publication, Dae Do is set to debut its hair products at a major trade show – the 2023 National Federation of Beauty Suppliers Trade Show – on July 16, 2023 at the Meadowlands Exposition Center in Secaucus, New Jersey.  A translated copy of the publication, which was originally published in Korean, is attached as Exhibit 2.

## FACTUAL BACKGROUND

### Bae's Employment with Hair Zone

23.     On or about June 13, 2007, Bae commenced employment with Hair Zone in a sales capacity.

24.     From approximately June 2007 through December 2013, Bae had responsibility for sales of all of Hair Zone's products, including hairpieces, braids, weaves, extensions, accessories, and designer wigs, for various regions.  From January 2014 through April 2016, Bae had responsibility for sales in the Commonwealth of Virginia and the State of West Virginia.  In May 2016, Bae was then reassigned to the sales territory that included the State of Maryland, Commonwealth of Virginia, and District of Columbia.  Bae remained in this position until July 2017, when he was reassigned to the New Jersey and Delaware sales territory.

25.     Bae was most recently employed by Hair Zone as Senior Sales Executive.  In his Sales Executive role, Bae had responsibility for sales of Hair Zone products within New Jersey and Delaware.  Bae had responsibility for the New Jersey/Delaware region from approximately July 2017 until his voluntary resignation from the Company on February 17, 2023.

26.     In connection with his employment, Hair Zone provided Bae with a Confidentiality Agreement (the "Agreement") that was executed by Bae on June 13, 2007.  Exhibit 1.

27.     The first paragraph of the Agreement states: "Because [Hair Zone] is furnishing and/or granting you the access to such information, we are requiring that you agree, as set forth below, to treat confidentially such information and any other information that you may come into possession or custody of during your employment with [Hair Zone] whether such information became known to you prior to the execution of this agreement or it becomes known to you after the execution of this agreement."

28.     "Confidential Information" is defined by the Agreement to include, but is not limited to the following:

> "[T]rade secrets, processes, business methods, business practices, business techniques, marketing methods, marketing practices, marketing techniques, purchasing methods, purchasing practices, purchasing techniques, sales methods, sales practices, sales techniques, programs, dates, data, figures, projections, costs, pricing, methods of operation, identity of plans, administrative methods, administrative practices, administrative techniques, administrative functions, administrative services, estimates, customer names, customer lists, customer histories, customer data, supplier names, supplier lists, supplier histories, supplier data, personal histories, personal records, 'rolodexes', financial statements, financial data, banking records, accounting procedures, credit information, credit practices, and/or seller techniques, without regard to form, format, representation or method of expression."

29.     Bae agreed that he would use Hair Zone's Confidential Information only in connection with his employment with Hair Zone "and for absolutely no other purpose."

6

30.     Bae agreed that he would not disclose any Confidential Information to any person or entity outside of Hair Zone unless he received prior written approval from an officer of Hair Zone.

31.     Bae agreed that at the end of his employment with Hair Zone, he would "promptly deliver" to Hair Zone any and all Confidential Information that is in his possession or custody.

32.     Bae agreed that he would "never use any 'Confidential Information'" of Hair Zone at any time after his employment with Hair Zone ended.

33.     Bae also agreed that upon termination of his employment, he would not compete with Hair Zone for a period of two (2) years from the date of his termination within the New York City metropolitan area.  Bae specifically agreed that he would not, directly or indirectly, "own, be employed by, work for, work with, or work on behalf of anyone or firm engaged in the business of wigs, hair pieces, hair attachments, braids, hair lotions, or any other product related to wigs or artificial hair."

34.     Bae agreed that "any unauthorized use of 'Confidential Information' in any manner no matter how slight is irreparably detrimental to" Hair Zone.

35.     Bae further agreed that "any violation of this agreement will cause [Hair Zone] irreparable injury that cannot be adequately compensated for."

36.     The Agreement states that Hair Zone "shall be entitled to reasonable attorney's fees in connection with any enforcement of any violation of this agreement[.]"

37.     In addition to the Agreement, Hair Zone maintains various policies within its Employee Handbook regarding the protection of confidential information.  Bae acknowledged receipt of Hair Zone's Employee Handbook.

38.     As an example, Hair Zone's Proprietary Information Policy requires that employees use Hair Zone's trade secrets or confidential information only for legitimate business purposes and specifically identifies "customer lists and preferences" and "financial information" as confidential information.

39.     Hair Zone also maintains a Return of Property Policy that requires employees, including Bae, to return to Hair Zone all Hair Zone property upon termination of employment.

40.     As a Senior Sales Executive at Hair Zone, Bae was generally responsible for sales of all Hair Zone products to its customers located in the New Jersey and Delaware region.

41.     Bae was also responsible for obtaining new clients in the New Jersey and Delaware region.

42.     As a Senior Sales Executive, Bae had access to certain highly confidential information that was necessary for him to perform his duties, including but not limited to, customer information, sales information, pricing information and strategies, terms of payment, and credit limits.

43.     As a Senior Sales Executive, Bae regularly attended sales meetings during which business strategies and sales strategies were discussed.

**Bae's Resignation From Hair Zone and Employment with Dae Do, A Direct Competitor of Hair Zone**

44.     On or about October 28, 2022, Bae informed Hair Zone that he was taking time off from work to travel to Korea to visit his family, and Hair Zone accommodated Bae's request.

45.     Shortly after returning to Hair Zone, on or about January 11, 2023, Bae informed Hair Zone that he was voluntarily resigning his position with Hair Zone.

46.     Though dated January 9, 2023, on January 11, 2023, Bae submitted a letter of resignation to Hair Zone in which he informed Hair Zone that he was resigning due to personal reasons.

47.     On or about February 16, 2023, Hair Zone conducted an exit interview with Bae, during which Bae informed Hair Zone that he was resigning from Hair Zone because he was planning to return to Korea to be with his extended family.

48.     Bae executed an Exit Interview Acknowledgement and stated that he "will not disclose any business secret as stated in the Agreement."

49.     In connection with his exit interview, Bae also represented to Hair Zone that Bae would, in accordance with the company's confidentiality policies, not disclose to any third party or other person (including those of affiliate companies) any information that he acquired during his employment.

50.     Bae informed Hair Zone during the exit interview that he was returning to Korea but that he would eventually return to the United States to work again, and that he was considering starting his own business.  When asked in what line of business he was considering to start his own business, Bae informed Hair Zone that he was not sure at that time.

9

51.     Bae also informed Hair Zone that he had no definitive plan to return to the United States and that the timing of his decision to return would depend in part on the health of his parents.

52.     Following Bae's resignation, Hair Zone later learned that Bae may have actually accepted an offer of employment with Dae Do.

53.     Upon learning that Bae may have accepted an offer of employment with Dae Do or its parent company, on or about March 20, 2023, Hair Zone inquired of Bae whether he had accepted an offer of employment with Dae Do, but Bae did not respond.

54.     On or about March 22, 2023, Hair Zone again inquired whether Bae had accepted an offer of employment, but again, Bae did not respond.

55.     It was not until approximately a month later that Bae informed Hair Zone that he had, in fact, accepted an employment offer with Dae Do.

56.     Subsequently, in late May 2023, Hair Zone learned that Bae had accepted a position with Dae Do as a sales leader overseeing a team of salespeople and with responsibility of sales for all of Dae Do's hair products.

57.     Upon learning that Bae had joined Dae Do in a sales position, Hair Zone conducted a search of Bae's e-mailing conduct to confirm, as he had acknowledged during his exit interview, that he had returned all Hair Zone's information.

58.     Hair Zone learned that in the days leading up to the announcement of his resignation and continuing until his last day of employment with Hair Zone, Bae had cherry-picked Hair Zone Confidential Information and trade secrets that he then e-mailed to his personal Gmail account and that he now possesses as an employee of Dae Do.

**<u>Dae Do Is A Direct Competitor Of Hair Zone</u>**

59.     Following his voluntary resignation from Hair Zone, Bae accepted an offer of employment, and is currently employed by Dae Do, a start-up competitor that incorporated in September 2022 and maintains its primary office in Englewood Cliffs, New Jersey.

60.     In October 2022, Dae Do filed an application for the trademark of its "Vivace" brand name with the U.S. Patent and Trademark Office ("USPTO").  At the time of its filing, Dae Do signed a certification before the USPTO that it had bona fide intention to use the mark VIVACE in connection with the sale of wigs, hairpieces, and other named goods.  In March 2023, Dae Do filed twelve (12) other trademark applications with the attestation that it intended to use those marks in connection with wigs and hairpieces.

61.     In December 2022, Dae Do filed papers with the New York Secretary of State to use Vivace as an "assumed name."

62.     Dae do sells, or plans to sell, hair products, including weaves, wigs, braids, and hair pieces.

63.     An article in the Beauty Times, a trade publication focusing on the ethnic beauty industry, based on a May 1, 2023 meeting with Dae Do's CEO Moonki Kim, Cho, and another Dae Do employee, identified Vivace (Dae Do) as a "hair specialist company that deals with various hair products, including wigs, braids, human hair, and weaves."  A copy of this article is attached as Exhibit 3.

64.     Dae Do has not yet launched any hair products, but according to a recent announcement, Dae Do's hair products "are set to debut" at a trade show in New Jersey in July 2023.  Exhibit 2.

65.     Dae Do will be debuting these products and selling them after using the ill-gotten fruits of Hair Zone's trade secrets and using the trade secrets stolen by Bae to improperly solicit Dae Do's customers while using the inappropriately obtained trade secret information to unfairly compete with Hair Zone.

66.     Bae is presently employed with Dae Do in a sales capacity.

**Bae's Breach of His Non-Compete Covenant**

67.     Bae's employment with Dae Do in a sales capacity is in violation of the non-compete covenant with Hair Zone that prohibits Bae from accepting employment with a competitor within the New York City metropolitan area.

68.     Bae's breach of the non-compete covenant is particularly damaging given his theft of Hair Zone's entire customer list, as well as other highly confidential sales, pricing, and business information of Hair Zone.

69.     By disregarding his restrictive covenants, commencing employment with a direct competitor, and stealing Hair Zone's confidential information, Bae has placed Hair Zone in an untenable position.  Relief is now essential to protect Hair Zone's valuable confidential and proprietary information as well as its customer relationships.

12

70.     As a result of Bae's intimate knowledge and access to information concerning Hair Zone's customers and sales information, it is unavoidable and inevitable that Bae will use the information he stole from Hair Zone in his new position at Dae Do.

71.     Should Bae be permitted to continue employment at Dae Do, he will do so armed with the entire list of customers of Hair Zone, as well as confidential information as to which customers he should solicit first, that he stole from Hair Zone in the days leading up to his resignation.   In the process, by employing Bae, Dae Do will usurp the substantial time and resources Hair Zone invested in developing and maintaining its customer relationships.

72.     If Bae is allowed to continue his employment with Dae Do, it will provide Dae Do an advanced knowledge of Hair Zone's customers and which customers to focus his sales efforts, and, therefore, give Dae Do an unfair advantage in the hair and beauty products space.

73.     Hair Zone will suffer irreparable harm if Bae is allowed to continue employment with Dae Do because, Bae has a roadmap to the specific customers to solicit, how much business that customer does in the hair product space, and the amount of credit that has been given to the customer.   In addition, Bae will know which customers to avoid.

74.     Hair Zone will suffer irreparable harm because Bae, as an employee of Dae Do in a sales position, would use the confidential customer and sales information he stole from Hair Zone while an employee of Hair Zone to unfairly compete with Hair Zone on behalf of Dae Do.

75.     Hair Zone cannot estimate with any degree of certainty the nature and extent of its potential damages to be incurred as a direct consequence of Bae's breach of his continuing obligations to Hair Zone.   As such, the damages and injuries threatened by reason of the intentional

actions of Bae are irreparable and Hair Zone has no adequate remedy at law to protect itself from Bae's wrongful activities.

76.     Indeed, when Bae executed the Agreement, he acknowledged that "any violation of this agreement will cause [Hair Zone] irreparable injury that cannot be adequately compensated for." Exhibit 1.

77.     The irreparable harm to Hair Zone is magnified by the fact that Dae Do plans to launch its products imminently, and, therefore, unless immediate injunctive relief is granted, Hair Zone will suffer irreparable harm in the loss of customers.

**Bae's Theft of Confidential Information and Trade Secrets From Hair Zone**

78.     Following his resignation and upon learning in late May 2023 that Bae had joined Dae Do as a sales leader, Hair Zone discovered that in the days leading up to and after notifying Hair Zone of his resignation, Bae sent numerous e-mails containing Hair Zone Confidential Information to his personal e-mail account, clintonbae@gmail.com, including confidential and trade secret information of Hair Zone.

79.     From January 2023 until his last day with Hair Zone in mid-February 2023, Bae e-mailed from his work e-mail account to his personal Gmail account dozens of e-mails, many of which included Hair Zone Confidential Information.

80.     The files and documents that Bae misappropriated from Hair Zone just before his resignation include Hair Zone's entire customer list, customer lists specific to the Maryland and Virginia regions, pricing information, sales strategies, sales goals, margins, and business plans.

81.     On January 3, 2023, just days before he notified Hair Zone of his voluntary resignation, Bae sent from his work e-mail account to his personal e-mail account a file titled 'ACCT 4USA' that is an Excel spreadsheet containing all Hair Zone active and inactive accounts. A copy of the e-mail, without the attachment, is attached hereto as Exhibit 4.

82.     The file stolen by Bae contains Hair Zone's entire customer list, including active and inactive accounts, for every customer throughout the United States, as well as Hair Zone's international customers.

83.     The customer list stolen by Bae contains the customer names and contact information for more than 8,000 of Hair Zone's active and inactive clients.

84.     In addition to containing the name of Hair Zone's customers, the file stolen by Bae contains, among other information, Hair Zone's confidential pricing information, its customers credit risk levels, terms of payment, and credit limits.

85.     In addition to the above, the customer list stolen by Bae contains the open balance for each of Hair Zone's customers.

86.     The customer list misappropriated by Bae also contains sensitive financial information, including Hair Zone's total credit line to customers, total default credit, and current accounts receivable.

87.     As Bae had responsibility for sales only in the New Jersey region at the time he stole this file, he had no legitimate business reason to e-mail to his personal e-mail account Hair Zone's entire customer list for all of the United States, as well as Hair Zone's international customers.

88.     The metadata for the file stolen by Bae shows that he accessed the file on January 3, 2023 at 2:22PM.  Three minutes later, at 2:25PM, Bae then e-mailed the file to his personal Gmail account.

89.     A competitor such as Dae Do could utilize this information to specifically target Hair Zone customers, and based on the pricing information within the document, could solicit those customers with better pricing.

90.     Approximately fifteen minutes after sending the entire customer list to his personal e-mail account, on January 3, 2023, Bae sent another e-mail from his work e-mail account to his personal email account that included six (6) different attachments, two of which contain Hair Zone Confidential Information and trade secrets:

      a.     One of the attachments contains Hair Zone's customer list for the State of Maryland, including the name of the customer, address, and contact information.  Hair Zone's customer information is Confidential Information.  Bae sent this file to his personal e-mail account approximately one week before tendering his resignation to Hair Zone, and, therefore, he had no legitimate business reasons to e-mail this file; and

      b.     Another attachment contains Hair Zone's customer list for the Commonwealth of Virginia, including the name of the customer, address, and both the contact name and contact information.  Hair Zone's customer information is Confidential Information.  Bae sent this file to his personal e-mail account approximately one week before tendering his resignation to Hair Zone, and, therefore, he had no legitimate business reasons to e-mail this file.

91.     The Maryland and Virginia customer lists misappropriated by Bae would be valuable in the hands of a competitor such as Dae Do because Dae Do would possess information on whom it should target for sales in those regions and how to contact key decision makers at those entities.

92.     On January 23, 2023, Bae sent from his work e-mail (clintonbae@sensationnel.com) to his personal e-mail account an e-mail that attached three (3) files, two of which contain Hair Zone Confidential Information and trade secrets:

    a.     One of the attached files misappropriated by Bae is titled '2022. 11 Sales Department MBR.pptx' and contains highly sensitive sales goals, sales results, sales margins, sales strategies, sales information by product type, and top sales regions for Hair Zone.  It also contains Hair Zone's highly confidential action plan, sales goals, and sales strategies.   Hair Zone's sales information, results, margins, and strategies are all Confidential Information.   As this file was prepared by and for Hair Zone's upper management team, of which Bae was not part, he had no legitimate business reasons to access and e-mail this file; and

    b.     Another attachment to the January 23, 2023 e-mail is named "FY2023 BUSINESS PLAN" and contains Hair Zone's highly confidential Human Resources strategies for 2023, Human Resources budgeting information, and Hair Zone's organizational chart.  Bae sent this file to his personal e-mail account after notifying Hair Zone of his resignation and in the days leading up to his last day of employment with Hair Zone, and, therefore, he had no legitimate business reason to e-mail this file.

93.     The sales and business plan documents misappropriated by Bae would provide a competitor such as Dae Do with a competitive advantage because it would know which markets to concentrate sales, where to focus its marketing, which products have the best margins, and how to best position itself in the market.  Dae Do would have access to this information without having to spend its own money on market research and sales analyses.

94.     Also on January 23, 2023, Bae sent from his work e-mail account to his personal Gmail account an e-mail that e-mail that attached six (6) files, three of which contain Hair Zone Confidential Information and trade secrets:

    a.     One of the attached files misappropriated by Bae is titled '7a bundle price' and contains highly sensitive pricing information for Hair Zone's products, including various pricing information for various styles and lengths of the product;

    b.     Another of the attached files, titled 'PREMIUM TOO YAKY PRICE' contains highly sensitive pricing and discount information for one of Hair Zone's products, as well as specific pricing and discount information for the specific color for each product; and

    c.     The attached file that is titled 'EVOKE EMPIRE' contains confidential pricing information for two Hair Zone's products, Evoke and Empire, as well as specific pricing information for various length options for the product;

95.     On January 12, 2023, Bae forwarded to his personal e-mail Hair Zone's confidential daily report for that day, which contains Hair Zone's confidential pricing and discounting information.

96.     On the next day, Bae forwarded to his personal e-mail a similar report for January 13, 2023.

97.     All of the information in paragraphs 81 through 96 contain confidential and trade secret information of Hair Zone.

98.     The confidential customer information, sales information, sales goals, margins, and business plans are all confidential information and trade secret information.

99.     Bae had no legitimate business reason for forwarding the files to his personal e-mail account.

100.    The information taken by Bae would provide invaluable competitive information to any skilled third party in the field to use Hair Zone's highly confidential customer lists, sales information, sales strategies, sales metrics, and business strategy information in order to unfairly compete with Hair Zone in a highly competitive market.

101.    Bae's possession of Hair Zone's trade secret and confidential information is particularly damaging to Hair Zone given Bae's acceptance of employment with Dae Do, a direct competitor of Hair Zone.

102.    Hair Zone's customer lists and customer information, sales information, sales strategies, sales metrics, and business strategy are all confidential and were prepared by Hair Zone in the course of its business at significant time, effort and expense.

103.    Hair Zone's confidential and proprietary information – and specifically, the information contained in the files stolen by Bae as outlined in paragraphs 81 through 96, above – is not generally known outside of Hair Zone.

19

104.    In addition to the theft of Hair Zone's Confidential Information and trade secrets, on or about June 28, 2023, Hair Zone learned that Bae, as Dae Do's sales leader, contacted a sales employee of Hair Zone requesting that Bae and Dae Do be provided with the names, contact information, and account details for Hair Zone's top ten customers in the State of Michigan.

105.    In late June 2023, Bae, as Dae Do's sales leader, also contacted a separate sales employee of Hair Zone requesting that the Hair Zone sales employee provide Bae with customer information for Hair Zone's customers located in the State of Ohio.

106.    The information contained in those files is not readily ascertainable from any source of public information; indeed, the *only* source of the stolen trade secrets and the confidential information therein is held by Hair Zone.

107.    Hair Zone's competitive position rests on its marketing and pricing information and strategy, and business strategies founded on confidentiality and protection of intellectual property in a highly competitive field.

## Dae Do's Acquisition, Possession and Use of Hair Zone's Trade Secrets and Confidential Information

108.    Bae, while employed by Dae Do, possesses Hair Zone's trade secret information and has used, and intends to use, such information to his benefit and the benefit of Dae Do.

109.    As an employee of Dae Do, Bae: (i) used the files that he misappropriated from Hair Zone in carrying out his duties for Dae Do; and/or (ii) made it inevitable that he will use such files or information in the course of carrying out duties for Dae Do.

110.    As a result of Bae's possession and the Hair Zone files as an employee of Dae Do, Dae Do acquired and now possesses Hair Zone's Confidential Information and trade secrets.

111.    Upon information and belief, Bae, while employed by Dae Do, transferred Hair Zone's trade secret information to Dae Do.

112.    As a result of Bae's transfer of Hair Zone trade secret information to Dae Do, Dae Do acquired and currently possesses Hair Zone's trade secret and confidential information.

**Hair Zone's Efforts To Protect Its Confidential And Proprietary Information**

113.    Hair Zone has in place policies, procedures and systems that protect its information from disclosure to others and from use by anyone for purposes other than Hair Zone's interest.

114.    In addition to the Agreement with Bae containing confidentiality and non-disclosure obligations, Hair Zone has agreements in place with other employees with whom access to Hair Zone's trade secrets and Confidential Information was provided.

115.    Hair Zone also required that Bae execute a Company Equipment Usage Agreement, whereby Bae agreed to safeguard all personal devices, software, applications, or other equipment issued to him and not permit any unauthorized access and/or uses of those devices by others.

116.    Hair Zone has policies and procedures concerning information and data security that state, in relevant part, that only the software provided and installed by Hair Zone is allowed on employee computers.

117.    Bae also agreed in the Company Equipment Usage Agreement that Hair Zone may monitor his usage of the company's equipment and access it for any purpose.

118.    Hair Zone also maintains an Employee Handbook that contains company policies regarding the protection of its confidential business information and trade secrets. The Handbook

states that "[t]he protection of confidential business information and trade secrets is vital to the interests and success of [Hair Zone]."

119.   Hair Zone's Electronic Communications Policy states that e-mail communications "are to be used solely for job-related purposes."

120.   Employees are prohibited from downloading or transferring Hair Zone files to removable media devices.

121.   Further, guests to any Hair Zone facility are not allowed to venture unescorted into such secure areas or to access Hair Zone Confidential Information unless they or their employer had executed appropriate non-disclosure agreements with Hair Zone.

122.   Employees are provided with a username and password to access Hair Zone's computer network.

123.   In addition, Hair Zone requires third parties, such as independent contractors and vendors, that receive or handle Hair Zone's confidential information to agree to a non-disclosure agreement.

## FIRST CLAIM FOR RELIEF

### (Against All Defendants for Misappropriation of Trade Secrets under the Defend Trade Secrets Act of 2016)

124.   Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

125.   Hair Zone owned and possessed certain confidential, proprietary and trade secret information, as alleged above.

126.    This confidential, proprietary and trade secret information relates to products and services provided, used, sold, shipped and ordered in, or intended to be provided, used, sold, shipped and/or ordered in, interstate commerce.

127.    Hair Zone has taken reasonable measures to keep such information secret and confidential.

128.    This confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

129.    In violation of Hair Zone's rights, Bae and Dae Do misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

130.    The trade secret information accessed and stolen by Bae includes (but is not limited to) each file identified in Paragraphs 81 through 96, above.

131.    Bae's misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

132.    In violation of Hair Zone's rights, Bae and Dae Do misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein, within the meaning of the DTSA, 18 U.S.C. 1836, by acquiring, using and/or disclosing the Hair Zone Confidential Information and trade secrets and continuing to possess, use, and/or disclose them for its own economic benefit.

133.    If Bae's conduct is not remedied, and if Bae is not enjoined, Bae will continue to misappropriate, disclose, and use for his own benefit and to Hair Zone's detriment, Hair Zone's trade secret information.

134.    If Dae Do's conduct is not remedied, and if Dae Do is not enjoined, Dae Do will continue to misappropriate, disclose, and use for its own benefit and to Hair Zone's detriment, Hair Zone's trade secret information.

135.    As the direct and proximate result of Bae's conduct as aforesaid, Hair Zone has suffered and, if Bae's conduct is not stopped, Hair Zone will continue to suffer, irreparable injury.

136.    As the direct and proximate result of Dae Do's conduct as aforesaid, Hair Zone has suffered and, if Dae Do's conduct is not stopped, Hair Zone will continue to suffer, irreparable injury.

137.    In addition, as a direct and proximate result of Bae and Dae Do's misappropriation, Dae Do has been unjustly enriched as a result of the misappropriation of Hair Zone's trade secrets within the meaning of § 1836(b)(3)(B)(i)(II) in an amount as yet unknown.

138.    Because Hair Zone's remedy at law is inadequate, Hair Zone seeks, in addition to damages, temporary, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information and other legitimate business interests. Hair Zone's business is reliant on its business reputation and its ability to confidentiality develop pricing strategies, marketing strategies and business plans in a competitive market and will continue suffering irreparable harm absent injunctive relief.

139.   Hair Zone has a substantial likelihood of success on the merits because of Bae's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

## SECOND CLAIM FOR RELIEF

**(Against All Defendants for Misappropriation of Trade Secrets in Violation of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq*.)**

140.   Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

141.   Hair Zone owned and possessed certain confidential, proprietary and trade secret information, as alleged above.

142.   Hair Zone has taken reasonable measures to keep such information secret and confidential.

143.   This confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

144.   This confidential, proprietary, and trade secret information was made accessible to Bae by virtue of his employment relationship with Hair Zone.

145.   In violation of Hair Zone's rights, and in breach of his contractual obligation to maintain secrecy, Bae misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein, in violation of N.J. Stat. Ann. § 56:15-1 *et seq*.).

25

146.    The trade secret information accessed and stolen by Bae includes (but is not limited to) each file identified in Paragraphs 81 through 96, above.

147.    Bae's misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

148.    In violation of Hair Zone's rights, Bae and Dae Do misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein, by acquiring, using and/or disclosing the Hair Zone Confidential Information and trade secrets and continuing to possess, use, and/or disclose them for its own economic benefit.

149.    Bae's intentional and malicious intent to misappropriate Hair Zone's confidential and trade secret information is further evinced by the fact that Bae has accepted, and is currently employed by, Dae Do, a direct competitor of Hair Zone.  These facts establish Bae and Dae Do's intent to use and/or disclose this confidential, proprietary, and trade secret information.

150.    Bae's continued possession of Hair Zone's trade secrets, combined with his present employment with a direct competitor of Hair Zone, places him in a position to use or disclose such information.

151.    The information taken by Bae would provide invaluable competitive information to any third party in the field, including Dae Do, to unfairly compete with Hair Zone.

152.    Dae Do's continued possession of Hair Zone's trade secrets, combined with its intention to enter the hair products space as a direct competitor of Hair Zone, places Dae Do in a position to use Hair Zone's information.

153.    The information possessed by Dae Do constitutes invaluable competitive information that will enable Dae Do to unfairly compete with Hair Zone.

154.    Bae has engaged, and continues to engage, in the unauthorized use and/or disclosure of Hair Zone's confidential, proprietary and trade secret information, in violation of his obligations to Hair Zone.

155.    Dae Do has engaged, and continues to engage, in the unauthorized use and/or disclosure of Hair Zone's confidential, proprietary and trade secret information.

156.    The proprietary and trade secret information stolen by Bae has been disclosed, or is threatened to be disclosed, to Hair Zone's competitor, Dae Do, with knowledge of Bae's breach of his confidential obligations to Hair Zone.

157.    If Bae's conduct is not remedied, and if Bae is not enjoined, he will continue to misappropriate, disclose, and use for his own benefit and to Hair Zone's detriment, Hair Zone's trade secret information.

158.    If Dae Do's conduct is not remedied, and if Dae Do is not enjoined, Dae Do will continue to misappropriate, disclose, and use for its own benefit and to Hair Zone's detriment, Hair Zone's trade secret information.

159.    As the direct and proximate result of Bae's conduct as aforesaid, Hair Zone has suffered and, if Bae's conduct is not stopped, Hair Zone will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

27

160.    As the direct and proximate result of Dae Do's conduct as aforesaid, Hair Zone has suffered and, if Dae Do's conduct is not stopped, Hair Zone will continue to suffer, irreparable injury.

161.    Because Hair Zone's remedy at law is inadequate, Hair Zone seeks, in addition to damages, temporary, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information and other legitimate business interests. Hair Zone's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

162.    Hair Zone has a substantial likelihood of success on the merits because of Bae's blatant, willful, and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

## THIRD CLAIM FOR RELIEF

### (Against Bae for Breach of Contract – Breach of Confidentiality Covenant)

163.    Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

164.    As a condition of his employment with Hair Zone, Bae agreed to a covenant of confidentiality to protect Hair Zone's Confidential Information, including trade secrets, and not to engage in acts or omissions that could result in wrongful disclosures of Hair Zone's Confidential Information.  This covenant is contained in the Agreement entered into by Hair Zone and Bae.  *See* Exhibit 1.

165. The Agreement requires that at the end of Bae's employment with Hair Zone he would "promptly deliver to [Hair Zone] any and all 'Confidential Information' that is in [his] possession or custody."

166. The Agreement further states that Bae agreed that he would "never use any 'Confidential Information' at any time after you end your employment with [Hair Zone]."

167. By e-mailing Hair Zone Confidential Information and/or Trade Secrets to his personal e-mail account in both the days leading up to Bae tendering his resignation and before his last day of employment with Hair Zone, Bae breached the Agreement.

168. Additionally, by taking and failing to return Hair Zone's Confidential Information and/or Trade Secrets, Bae breached the Agreement.

169. Hair Zone performed all of its obligations pursuant to the Agreement.

170. Bae breached the covenant of confidentiality in the Agreement by accessing Hair Zone's confidential and trade secret information and by transferring that information to his personal e-mail account in the days leading up to his departure from Hair Zone.

171. Bae's continued possession of Hair Zone's trade secrets and Confidential Information, combined with his employment with a direct competitor of Hair Zone, places him in a position to use or disclose such information.

172. As the direct and proximate result of Bae's conduct as aforesaid, Hair Zone has suffered and, if Bae's conduct is not stopped, Hair Zone will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

173.     Hair Zone has been damaged by these breaches for which it seeks damages and injunctive relief as more particularly set forth below.

174.     Additionally, as a result of Bae's conduct, Hair Zone has incurred reasonable and necessary attorneys' fees.  As such, Hair Zone respectfully requests that it be permitted to recover all costs, reasonable attorney fees and expenses as provided under the Agreement.

## FOURTH CLAIM FOR RELIEF

### (Against Bae for Breach of the Duty of Loyalty)

175.     Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

176.     As an employee of Hair Zone, Bae had a duty of loyalty to Hair Zone to act in Hair Zone's interests.

177.     As an employee of Hair Zone, Bae had a duty not to compete with Hair Zone while he was employed by Hair Zone or take steps to prepare to compete with Hair Zone.

178.     As an employee of Hair Zone, Bae had a duty not to take affirmative steps to injure Hair Zone's business.

179.     Bae breached the duty of loyalty he owed to Hair Zone by taking Hair Zone client and other confidential business information while still employed by Hair Zone and intending to use such information to his benefit and to the detriment of Hair Zone.

180.     As an employee of Hair Zone, Bae had a duty not to act in a manner that would place Hair Zone's confidential information in jeopardy of being disclosed to a third party or used to the detriment of Hair Zone.

30

181.    Bae breached the duty of loyalty he owed to Hair Zone by misappropriating Hair Zone's Confidential Information and trade secrets during his employment with Hair Zone.

182.    Hair Zone has suffered damages proximately caused by Bae's breaches of his duty of loyalty.

183.    By the conduct described above and realleged, Bae violated those duties, and instead acted in his own interests and contrary to the interests of Hair Zone.

184.    Bae's actions breached the duty of loyalty owed to Hair Zone and have damaged Hair Zone.

### FIFTH CLAIM FOR RELIEF

### (Against Dae Do for Unfair Competition)

185.    Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

186.    Dae Do engaged in unfair and unscrupulous commercial tactics—as detailed hereinabove—calculated to prevent Hair Zone from providing competitive pricing for its products, all to the disadvantage of Hair Zone's customers, as well as to Hair Zone.

187.    By wrongfully acquiring and using Hair Zone Confidential Information and trade secrets, Dae Do has engaged in unfair competition with Hair Zone.

188.    The unfair and unscrupulous commercial tactics by Dae Do constitute unfair competition, and Dae Do's actions proximately injured and damaged Hair Zone.

## SIXTH CLAIM FOR RELIEF

**(Against All Defendants for Tortious Interference with Business Relations)**

189.    Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

190.    Bae and Dae Do have wrongfully and tortiously interfered, and upon information and belief are continuing to wrongfully and tortiously interfere with the business relationships of Hair Zone, as well, upon information and belief, with Hair Zone's prospective contracts with customers or potential customers.  Bae and Dae Do have acted with a conscious desire to interfere with Hair Zone's relationships.

191.    In taking such actions, Bae and Dae Do have acted without justification or legitimate business purpose and with the malicious intent to injure Hair Zone.  Hair Zone has been and will be proximately harmed by the willful, wanton, malicious and egregious tortious interference by Bae and Dae Do as described above.

## SEVENTH CLAIM FOR RELIEF

**(Against Bae for Breach of Contract – Breach of Non-Compete Covenant)**

192.    Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

193.    The Agreement is a valid, enforceable contract entered into between Hair Zone and Bae.

194.    Hair Zone has performed all of its duties and obligations under the Agreement.

195.    Bae has materially breached the non-compete provision within the Agreement by commencing competitive employment with Dae Do prior to the expiration of the non-compete period set forth in the Agreement.

196.    Bae's breach of his non-compete obligations has caused, and will continue to cause, Hair Zone to suffer substantial injury that cannot be calculated, and irreparable harm to its business as he specifically acknowledged and agreed.

**EIGHTH CLAIM FOR RELIEF**

**(Against Bae for Disgorgement To Hair Zone By Bae As And For Being Faithless Servant )**

197.    Hair Zone repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

198.    An employer in New Jersey may seek and obtain disgorgement of a disloyal employee's compensation as a remedy for the breach of the duty of loyalty, with or without a finding of economic loss.

199.    Hair Zone is such an employer, and Bae is such an employee.

200.    Hair Zone is thus entitled to relief, including but not limited to, disgorgement of all compensation from the onset of Bae's disloyalty and any compensation that Bae subsequently received as a result of his disloyal conduct.

**WHEREFORE**, Hair Zone respectfully prays the Court for judgment against Bae and Dae Do providing:

1.    A Seizure Order requiring the seizure of all electronic devices in Bae's possession, custody or control, and that such devices be provided to the Court so that a forensic

33

analysis of the devices can be conducted by an independent computer forensic expert approved by the Court;

2.     An Order requiring that Bae provide to Hair Zone any and all hard copies of Hair Zone documents or files in his possession or control;

3.     An Order requiring that Bae's Dae Do work e-mail and computer be subject to a forensic analysis conducted by an independent computer forensic expert approved by the Court;

4.     An Order requiring that Google LLC and/or Gmail preserve all electronic mail for clintonbae@gmail.com, and any other e-mail accounts owned by Bae;

5.     An Order requiring that Bae allow for a forensic review of his personal Gmail account, clintonbae@gmail.com, by an independent computer expert approved by the Court;

6.     An Order requiring that Dae Do's computer network and e-mail be subject to a forensic analysis conducted by an independent computer forensic expert approved by the Court;

7.     Temporary, preliminary, and permanent injunctive relief restraining Bae and Dae Do from further misappropriating or using Hair Zone's trade secrets and confidential information;

8.     Temporary, preliminary, and permanent injunctive relief restraining Bae from continuing employment with Dae Do;

9.     That Bae is temporarily, preliminarily and permanently:

   i)     restrained from keeping, retaining, transmitting, possessing or in any way using, disclosing or having continuing access to Hair Zone documents or information;

34

ii) required to provide to Hair Zone, and allow Hair Zone to seize, freeze and examine any and all communications devices, computers or other electronic devices of Bae to assure that he is not keeping, retaining, transmitting, possessing or in any way using, disclosing or having continuing access to Hair Zone documents or information and to determine with whom such documents or information have been shared or disclosed;

iii) required to provide Hair Zone or its designated agents access to, and the right to inspect, any and all computers or other electronic device or any e-mail account that now contains or ever contained Hair Zone's documents or information;

iv) required, other than as provided in subparagraph (v), to refrain from altering, discarding, destroying or otherwise changing any and all computers or other electronic devices or email or other accounts or storage media of any kind or character that now contain or ever contained Hair Zone's documents or information, and must preserve same for future inspection;

v) required to provide Hair Zone, and Hair Zone's counsel, with a document in a form acceptable to Hair Zone and to any relevant email account provider authorizing the removal and deletion from such account or service any and all emails and attachments containing Hair Zone documents or information;

10.     Compensatory, consequential and incidental damages;

11.     Punitive or exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), N.J.S.A. § 56:15-4(b), and/or other applicable law;

12.     Disgorgement of past wages, commissions, severance and compensation of any kind during Bae's period of disloyalty and dismissal and forfeiting of any claim to additional such compensation after the termination of his employment;

13.     Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1836(b), N.J.S.A. § 56:15-6, the Agreement, and/or other applicable law;

14.     For the immediate return of all Hair Zone property taken, including any and all documents or other means of information storage containing Hair Zone property and confidential information;

15.     Pre-judgment and post-judgment interest on that award; and

16.     Such other and further relief as this Court deems equitable and just.

DATED:  July 5, 2023           EPSTEIN BECKER & GREEN, P.C.

By:   /s *Daniel R. Levy*
_____
Daniel R. Levy, Esq.
David Mordkoff, Esq.
Attorneys for Plaintiff
Hair Zone, Inc.

## <u>CERTIFICATION UNDER L.CIV.R.11.2</u>

This matter in controversy is not the subject of another action pending in any court, or any other pending arbitration or administrative hearing.


DATED:  July 5, 2023                    EPSTEIN BECKER & GREEN, P.C.


By:     /s *Daniel R. Levy*
_____
Daniel R. Levy, Esq.
David Mordkoff, Esq.
Attorneys for Plaintiff
Hair Zone, Inc.

## VERIFICATION

I, Louis Choi, hereby verify and certify under 28 U.S.C. §1746 to the following facts:

1.      I am employed at Hair Zone, Inc. ("Hair Zone") as Vice President.

2.      I have read the foregoing Complaint and I verify, based on my personal knowledge, the records and information maintained by Hair Zone to which I have access, that the facts stated in the Complaint are true.

I certify under penalty of perjury that the foregoing is true and correct.

_____
LOUIS CHOI

Dated:  July 5, 2023

# EXHIBIT 1

# CONFIDENTIALITY AGREEMENT

TO: ___Joon   han    BAE___

Name of Employee

As you are given jobs, tasks, responsibilities, assignments, or projects by Hair Zone, Inc. (hereinafter referred to as the "HZ"), in connection with your employment at HZ, your undertaking of such jobs, tasks, responsibilities, assignments or projects may require the disclosure of confidential information to you that is proprietary to HZ. Because HZ is furnishing and/or granting you the access to such information, we are requiring that you agree, as set forth below, to treat confidentially such information and any other information that you may come into possession or custody of during your employment with HZ whether such information became known to you prior to the execution of this agreement or it becomes known to you after the execution of this agreement.

For the purpose of this agreement, "Confidential Information" shall means any and all information: (1) that becomes known to you as a consequence of or through your employment with HZ, (2) not generally known outside of HZ, and/or (3) that maybe used by HZ in connection with any of HZ's functions or businesses of any kind.
Such "Confidential Information" may include, but is not limited to, trade secrets, processes, business methods, business practices, business techniques, marketing methods, marketing practices, marketing techniques, purchasing methods, purchasing practices, purchasing techniques, sales methods, sales practices, sales techniques, programs, dates, data, figures, projections, costs, pricing, methods of operation, identity of plans, administrative methods, administrative practices, administrative techniques, administrative functions, administrative services, estimates, customer names, customer lists, customer histories, customer data, supplier names, supplier lists, supplier histories, supplier data, personal histories, personnel records, "rolodexes", financial statements, financial data, banking records, accounting procedures, credit information, credit practices, and/or selling techniques, without regard to form, format, representation or method of expression.

You agree that the "Confidential Information" will be used by you only in connection with your employment    with HZ and for absolutely no other purpose. You agree never to make any unauthorized copy of any "Confidential Information". You acknowledge that any unauthorized use of "Confidential Information" in any manner no matter how slight is irreparably detrimental to HZ. You agree not to disclose any "Confidential Information" to any person or entity outside of HZ, not directly related to your functions at HZ, unless you receive prior written approval from an officer of HZ. In the event, that you are required by law or process to make disclosure of "Confidential Information" to any person or entity outside of HZ, you shall promptly so advise HZ prior to any such disclosure.

You agree that at the end of your employment with HZ, you will promptly deliver to HZ any and all "Confidential Information" that is in your possession or custody. You also agree that you will never use any "Confidential Information" at any time after you end your employment with HZ.

You agree not to compete with the business of HZ or its successors or assigns upon the termination of your employment with HZ, for a period of two (2) years from the date of your termination, without regard to the cause of your termination, within the New York City metropolitan area. For the said two (2) year period within the New York City metropolitan area, you agree not to direct or indirectly own, be employed by, work for, work with, or work on behalf of anyone or firm engaged in the business of wigs, hair pieces, hair attachments, braids, hair lotions, or any other product related to wigs or artificial hair.

You agree that any violation of this agreement will cause HZ irreparable injury that can not be adequately compensated for. You agree that HZ shall be entitled to reasonable attorney's fees in connection with any enforcement of any violation of this agreement; that this agreement is the entire understanding between you and HZ with regard to "Confidential Information"; that this agreement may not be changed in any way unless in writing signed by you and an officer of HZ and, that this letter is governed by the laws of the state of New York and New Jersey.

Very truly yours,
HAIR ZONE, INC.

By _____

Name:  Hyunsook Lee

Title:    Administrative Manager

Date:    June 4, 2007

I have read this agreement, fully understand it and agree to all its terms and conditions:

Joon    han    Bae
Name: _____

Title:   salesperson

Date:   6/13/2007

# EXHIBIT 2

## 비바체 Vivacé,
## 헤어 전문 회사로서
## '역동적인' 출발



5월 1일, 헤어 업체 비바체(Vivacé; 대표 김문기)가 뉴저지 잉글우드 클리프에서 새롭게 설립되었다. 비바체는 김문기 사장이 사업 설명회를 통해 KISS그룹으로부터 자금을 지원받고 설립한 회사로, 가발뿐 아니라 브레이드, 휴먼 헤어 위빙 등 헤어 관련 전 제품을 다루는 헤어 전문 업체이다.

세일즈맨으로 시작, 헤어 업계 30년의 경력을 바탕으로 비바체를 탄생시킨 김 사장은 헤어 회사를 설립한 이유에 대해서 "지금의 헤어 시장이 특정 회사들을 중심으로 한 셀러 마켓으로 운영되다 보니 손님들(뷰티서플라이 점주) 입장에서는 어려움이 많았다"며 "무리한 세일을 하지 않고 손님들에게 겸손하게 다가가는 게 비바체의 영업 방침"이라고 강조했다.

Vivacé는 본래 클래식 음악에서 템포를 나타내는 용어이다. 사전적인 의미로 곡을 '아주 빠르게' 즉 '역동적으로 살아 숨쉬며 활기차게 in a Lively and Brisk Manner' 연주하라는 뜻이다. 또한 비바체의 Brand Tag Line 인 'You Define Beauty'에는 틀에 짜여 소비되는 아름다움이 아니라 소비자 스스로가 아름다움의 정의를 내리고 자신에게 자부심을 갖길 바라는 비바체의 소망이 담겼다. '소비자의 니즈를 항상 역동적으로, 빠르게 파악하여 소비자들의 마음을 사로잡는 브랜드'가 비바체의 지향점이다.

비바체의 헤어 제품들은 7월 뉴저지에서 열리는 NFBS트레이드 쇼에서 첫선을 보일 예정이다. 고전하는 헤어 업계에 활력을 불어넣어줄 비바체의 힘찬 행보를 기대해봐도 좋겠다.

**Vivacé** | 대표전화 848-216-2297
위치 : 456 Sylvan Ave. Suite 202 Englewood Cliffs, NJ 07632





# Vivacé™

## YOU DEFINE BEAUTY.

혁신이 이끄는 새로운 세상.
아름다움의 정의를 바꾸는 새로운 헤어 브랜드가 옵니다.

**INTRODUCING NEW FASHION HAIR BRAND,** Vivacé

On May 1st, a hair company Vivace (CEO Moonki Kim) was newly established in Englewood Cliffs, New Jersey. Through a business briefing session, CEO Moonki Kim explained, Vivace is a company established with a financial support from the KISS Group, a hair company specialized in all hair-related products, not only wigs but as well as braids, human hair weaving, and more.

CEO Kim, who started as a salesman and found Vivace based on his 30 years of experience in the hair industry, said, "Current hair market is operated as a seller market centered on certain companies, so it is difficult for the customers (beauty supply store owners). It is Vivace's sales policy to approach customers in a modest way rather than enforcing sales.", as he explained the reason behind establishing a hair company.

Vivace is originally a term for tempo/speed in classical music. As defined in the dictionary, it means to play the song "very quickly," in other words, "dynamically alive, and energetically, in a Lively and Brisk Manner." In addition, Vivace's Brand Tag Line, "You Define Beauty," contains Vivace's wish that consumers themselves define beauty and take pride in themselves, not a beauty consumed in a box. Vivace's goal is to "always identify consumers' needs dynamically and quickly to capture consumers' hearts."

Vivace's hair products are set to debut at the NFBS Trade Show in New Jersey in July. You can look forward to Vivace's powerful moves to give a boost to the struggling hair industry.

# EXHIBIT 3

**COLUMN**

# Kiss그룹 헤어시장 진출에 대한
# 기대와 염려

## Expectations and Concerns over
## Kiss Group's Entry into the Hair Market



발행인 이계송  zotazoa@gmail.com

Kiss Group이 헤어시장에 진출한다. 그간 소문만 무성해 이런 저런 추측만으로 뷰티업계가 논란에 휩싸였었다. 마침내 그룹 관계자가 "좋은 제품을 만들어 업계 발전에 기여하겠다"며 진출 사실을 확인해 주었다.

자유경쟁시장에서 Kiss의 새로운 사업 진출을 두고 누구든 시비할 수 없다. 다만 우리 뷰티업계의 주요 리더기업으로서 Kiss Group의 위치와 영향력을 고려할 때, 새로운 사업에 대한 긍정적 기대와 함께 또한 염려하는 업계의 분위기도 있음을 주목할 필요가 있다.

긍정적 반응은 "자본력과 패션기술력이 막강한 업체이므로 경영진의 의지에 따라서는 업계 발전에 크게 기여할 수 있다"는 것이다. Kiss Group 관계자도 그렇게 천명하고 있다. 손톱 제품으로 성공의 기반을 닦았던 Kiss Group이 코스메틱을 비롯한 뷰티 케어 제품 전반에도 진출, 흑인뷰티서플라이 업계의 공급의 질과 서비스를 한 차원 높였던 공이 있다. 헤어업계도 그런 차원에서 긍정적 기여를 할 수도 있다는 것이다.

반면, "헤어업계는 일반 뷰티잡화나 헤어케어 제품 시장과는 다르다. 60여년 쌓아온 노하우는 물론 자본력에서도 만만치 않은 기존의 헤어전문업체들이 오랫동안 상호 경쟁과 연대를 통해서 시장을 잘 닦아 놓았다. 막강한 새 진입자에 대한 기존 주자들의 견제가 사활을 걸고 시작될 것이고, 마침내는 자존심 대결로 이어질 것이다. 그 결과 비슷비슷한 제품을 가지고 가격경쟁만 심화되어 모두가 패자가 될 수도 있다." 이런 우려가 우리 업계에 있음을 또한 간과해서는 안된다.

사실 그동안 우리 헤어수입/도매업계는 카피제품들이 다투어 공급되면서 소매상들의 매장은 이미 제품 수용의 한계점을 넘어섰다. 이름만 다르지 동일 공장에서 생산된 제품들이 소매 매장을 가득 채우고도 넘치니, 얼마나 비효율적이고 비합리적인 현상인가. 여기에 또 다른 카피제품이 등장한다고 생각하면 정말 끔찍한 악몽이 될 것이다.

Kiss Group에 하나만 부탁한다. 또 하나의 "카피켓 Coy Cat"이 되지 말라는 것이다. 남들이 고양이를 보고 고양이를 그릴 때, Kiss만은 적어도 고양이를 본떠 호랑이를 그리라는 것이다. 그것이 업계 1등 기업으로서 Kiss의 자존심을 지키는 길일 것이다. 모방은 어쩔 수 없는 일이라 하더라도, 적어도 모방 위에 새로운 아이디어를 얹어 더 좋은 기능과 서비스가 담긴 아주 독특한 제품을 공급하라는 것이다. 단순 "카피켓 Copy Cat"이 아니라 요즘 기업계에 새롭게 등장한 용어로서 소위 "카피타이거 Copy Tiger"가 되라는 것이다. 그것이 기존 헤어업계에 자극제가 된다면 또 한번의 도약에 기여하는 일이 될 수 있을 것이다.

20

Kiss Group is entering the hair market, and the beauty industry has been embroiled in controversy with various speculations swirling around for some time. Finally, a group official confirmed the entry, stating that they will create good products to contribute to the industry's development.

In a free market, no one can argue against Kiss's new business entry. However, as a major leader in the beauty industry, it is important to note the positive expectations and concerns within the industry regarding Kiss Group's position and influence in the market.

The positive response is that "as a company with strong capital and fashion technology, they can contribute significantly to the industry's development depending on the management's will." A Kiss Group official also echoes this sentiment. Having laid the foundation for success with nail products, Kiss Group expanded into cosmetics and elevated the quality and service of the black beauty supply industry. They could potentially make a positive contribution to the hair industry in the same way.

On the other hand, the hair industry is different from the general beauty goods or hair care product market. Established hair specialists with over 60 years of accumulated expertise and capital have long dominated the market through mutual competition and solidarity. The restraint they exercise over powerful new entrants will be a life-or-death struggle, ultimately resulting in a battle of pride. As a result, everyone could end up losing out by only intensifying price competition with similar products. We must not overlook the concern that such a situation exists in our industry.

In fact, our hair import/wholesale industry's supply has already exceeded the limit of accepting products by retailers as they compete to supply the overflow of copied products. It is a highly inefficient and irrational phenomenon when products produced in the same factory, only with different names, fill up stores and create overflow. If we think that more copied products will appear, it will become a terrible nightmare.

We ask only one thing from Kiss Group. Don't become another "Copy Cat." When others see a cat and draw a cat, Kiss should at least draw a tiger based on the cat they saw. That will be the way for Kiss to protect its pride as the industry leader. Although imitation is inevitable, the idea is to supply a very unique product with better functionality and services by adding new ideas on top of imitation. Not just a simple "Copy Cat," but rather a so-called "Copy Tiger" in the recently emerged term in the corporate world. It could be a stimulant in the traditional hair industry and contribute to another leap forward.

# EXHIBIT 4

| | |
|---|---|
| **From:** | Clinton Bae <clintonbae@sensationnel.com> |
| **Sent:** | Tuesday, January 3, 2023 2:25 PM |
| **To:** | CLINTONBAE@GMAIL.COM |
| **Subject:** | ACCT |
| **Attachments:** | ACCT 4 USA.xlsx |

Sent from Mail for Windows