# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAIR ZONE INC, | |
|         Plaintiff, | Civil Action No. |
| v. | 2:23-cv-03598-ES-AME |
| JOON HAN BAE a/k/a CLINTON BAE); DAE DO INC. (d/b/a VIVACE); JOHN DOES 1-5; and ABC CORPS. 1-5, | Hon. Esther Salas, U.S.D.J. Hon. Andre M. Espinosa, U.S.M.J. |
|         Defendants, | Document Filed Electronically |

## BRIEF OF DEFENDANTS DAE DO INC. AND JOON HAN BAE IN OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

**K&L GATES LLP**
One Newark Center - Tenth Floor
Newark, New Jersey 07102
(973) 848-4000
*Attorneys for Defendants Dae Do Inc. and Joon Han Bae*

VINCENT N. AVALLONE
 Of Counsel and On the Brief
JOSHUA D. RINSCHLER
On the Brief

315949046.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS PERTINENT TO THIS APPLICATION......................3

A.   Vivace Has Not Yet Begun to Do Business .................................................3

B.   Mr. Bae's Employment with Vivace ...........................................................3

C.   Vivace Has Not Used Any Hair Zone Confidential Information...................4

D.   Hair Zone Never Contacted Vivace or Mr. Bae Prior to Filing the
     Instant Lawsuit.............................................................................................5

E.   Hair Zone Requires Mr. Bae to Sign a "Confidentiality Agreement" ...........6

F.   Hair Zone's Claims that Mr. Bae Possesses its Confidential
     Information are Meritless ..............................................................................6

LEGAL ARGUMENT  HAIR ZONE IS NOT ENTITLED TO A TRO................7

A.   Hair Zone Cannot Demonstrate By Clear and Convincing Evidence
     Any of the Requirements for Temporary Restraints ....................................7

B.   Hair Zone Has Not Established a Likelihood of Success on the
     Merits ...........................................................................................................8

     i.     Hair Zone is Not Likely To Succeed on its Misappropriation
            of Trade Secrets Claims (Counts One and Two) ................................8

     ii.    Hair Zone is Not Likely To Succeed on its Breach of Contract
            Claim (Count Three) ........................................................................10

     iii.   Hair Zone is Not Likely To Succeed on its Claim for a Breach
            of the Duty of Loyalty (Count Four)................................................11

     iv.    Hair Zone is Not Likely To Succeed on its Unfair Competition
            Claim (Count Five)...........................................................................12

     v.     Hair Zone is Not Likely To Succeed on its Tortious
            Interference Claim (Count Six).........................................................12

     vi.    Hair Zone is Not Likely To Succeed on its Claim for Breach
            of Mr. Bae's Restrictive Covenants (Count Seven)...........................13

     vii.   A "Faithless Servant" Claim is not Cognizable Under New
            Jersey Law (Count Eight)..................................................................18

C.   Injunctive Relief is Not Needed to Prevent Irreparable Harm. ...................19

D.   The Balancing of the Hardships and the Public Interest Favor
     Defendants ...................................................................................................22

CONCLUSION ..................................................................................................22

315949046.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Acierno v. New Castle County,
    40 F.3d 645 (3d Cir. 1994) .............................................................................19, 20

BDO Seidman v. Hirshberg,
    993 N.Y.2d 382 (N.Y. 1999) .................................................................................13

Brown & Brown, Inc. v Johnson,
    12 N.Y.S. 3d 606 (N.Y. 2015)...............................................................................14

Bryan v. Nolan,
    2009 WL 2843902 (D.N.J. Sept. 1, 2009)..............................................................7

Canon Financial Services, Inc. v. Bray,
    2015 WL 851816 (D.N.J. Feb. 26, 2015)..............................................................11

Commc'ns Workers of Am. v. Alcatel-Lucent USA Inc.,
    2015 WL 7573206 (D.N.J. Nov. 25, 2015)...........................................................21

Connecticut General Life Ins. Co. v. Punia,
    884 F. Supp. 148 (D.N.J. 2005).............................................................................17

Corporate Synergies Group, LLC v. Andrews,
    775 Fed. Appx. 54, 56 (3d Cir. 2019)...................................................................14

East Brunswick Bd. of Educ. v. GCA Services Group, Inc.,
    2014 WL 4384541 (D.N.J. Sept. 4, 2014).............................................................14

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007) ..................................................................................10

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
    882 F.2d 797 (3d Cir. 1989) ...................................................................................7

Karlin v. Weinberg,
    77 N.J. 408 (1978) .................................................................................................13

315949046.1

Maw v. Advanced Clinical Comm., Inc.,
    179 N.J. 439 (2004) ..................................................................................14

Oakwood Labs. LLC v. Thanoo,
    999 F.3d 892 (3d Cir. 2021) ...............................................................8, 9

Rohm & Haas Co. v. Adco Chem. Co.,
    689 F.2d 424 (3d Cir. 1982) .....................................................................9

S & R Corp. v. Jiffy Lube Int'l, Inc.,
    968 F.2d 371 (3d Cir. 1992) .....................................................................8

Scott, Stackrow & Co. C.P.A.s v. Skavina, 780 N.Y.S.2d 675, 677-78
    (3d Dep't 2004) ......................................................................................16

Solari Industries v. Malady,
    55 N.J. 571 (1970) ..................................................................................13

Sunbelt Rentals, Inc. v. Love,
    2021 WL 82370 (D.N.J. Jan. 11, 2021)..................................................16

Tiger Supplies Inc. v. MAV Associates LLC,
    2022 WL 1830796 (D.N.J. June 3, 2022)........................................18, 19

Varrallo v. Hammond, Inc.,
    94 F.3d 842 (3d Cir.1996) ......................................................................13

Westchester Fire Ins. Co. v. Glob. Real Const., LLC,
    2009 WL 137414 (D.N.J. Jan. 20, 2009)................................................21

Whitmyer, Bros., Inc. v. Doyle,
    58 N.J. 25 (1971) ....................................................................................14

Wurth USA, Inc. v. Thompson,
    2021 WL 5866899 (D.N.J. Dec. 10, 2021).............................................21

**Court Rules**

Federal Rule Civ. P. 4 .....................................................................................8

L. Civ. R. 65.1(a) ............................................................................................8

315949046.1

## PRELIMINARY STATEMENT

Defendants Dae Do Inc., (trade name, "Vivace") and Joon Han Bae ("Bae") (collectively, "Defendants") submit this brief in opposition to the application of Plaintiff Hair Zone Inc. ("Hair Zone") for a temporary restraining order ("TRO").[1]

Vivace is a new company that is preparing to sell wigs and hair extensions. To date, it has not sold a single dollar's worth of products, it has not accepted any orders from any customers and it has not executed a single customer contract. Hair Zone has known for months that its former employee, Mr. Bae, works for Vivace. Yet Hair Zone never once reached out to either Vivace or Mr. Bae regarding Mr. Bae working for Vivace or his alleged possession of confidential information from Hair Zone. Had they done so, Vivace would have taken reasonable steps to address Hair Zone's concerns. Instead, Hair Zone waited until Vivace was nearly ready to begin conducting business to file this emergency application based upon a variety of trumped up, and ultimately meritless, claims.

Hair Zone hopes to accomplish three things using this strategy. First, it seeks to disrupt Vivace's entry into the marketplace by forcing its employees to spend time and effort defending this lawsuit. Second, Hair Zone seeks to sully

---

[1] Because of the short time constraints, this brief is submitted in opposition to Hair Zone's TRO application only. Defendants reserve the right to file further opposition to Hair Zone's application for a preliminary injunction prior to the return date, if appropriate. However, for the reasons that follow, Hair Zone's application for injunctive relief is so devoid of factual or legal support that the Court should simply deny it outright.

315949046.1

Vivace's name in the industry through the allegations in this lawsuit.  Third, by bringing its claims on an expedited basis, Hair Zone hopes to obtain more relief than would be merited by what are, ultimately, very weak claims.

And make no mistake:  Hair Zone's claims are very weak indeed.  These claims are based primarily on Mr. Bae's alleged "theft" of purported "trade secrets."  In reality, the Hair Zone documents Mr. Bae is alleged to possess, all of which are many months old, are not confidential and many of them are actually provided to customers.  No one at Vivace has used any of the information in these documents.  Hair Zone also seeks to enforce a non-competition provision contained in the "Confidentiality Agreement" it required its employees to sign but Vivace has yet to sell a single product and, therefore, Mr. Bae could not have "competed" with Hair Zone.  Moreover, as set forth below, Vivace will limit the sales responsibilities of Mr. Bae to areas outside of the New York City metropolitan area (the area covered by the non-competition provisions) for a reasonable period of time.  Thus, there will be no possibility of any breach of any non-compete agreement going forward.  If Hair Zone had ever contacted Vivace prior to filing its lawsuit, Vivace would have told Hair Zone this.

Simply put, Hair Zone cannot establish any of the elements required for the entry of a TRO.  It is unlikely to succeed on the merits of any of its claims, it cannot identify any irreparable harm that it would suffer in the absence of

- 2 -

emergent relief and the balancing of the hardships and public policy do not favor the entry of a TRO.  For these reasons, as set forth below, the Court should deny Hair Zone's TRO application out of hand.

## STATEMENT OF FACTS PERTINENT TO THIS APPLICATION

**A.**     **Vivace Has Not Yet Begun to Do Business**

Vivace is currently preparing to sell wigs and hair extensions.  Kim Decl., ¶2.  To date, Vivace has not sold any products, it has not accepted any orders from any customers for any products and it has not executed any contracts or other agreements with customers.  Id., ¶3.  In fact, Vivace does not have any inventory of products to sell yet.  Id.  Vivace has not even developed a template customer contract yet.  Id.Vivace also has not finalized or set any prices for any of the products that it plans to sell.  Id.

Vivace expects to begin selling its products toward the end of July 2023 or beginning of August 2023.  Id., ¶4.  When Vivace begins selling products, members of its sales team will be assigned responsibility to certain geographic territories.  Id.  However, to date, the composition of those territories has not yet been determined and none of Vivace's sales representatives have been assigned a territory.  Id.

**B.**     **Mr. Bae's Employment with Vivace**

Mr. Bae has been employed by Vivace since in or around March 2023.  His position is Director on the Sales Team.  Id., ¶7.  When Vivace begins selling its

products, Mr. Bae will supervise certain sales team members and also sell Vivace products in a set geographic territory.  <u>Id.</u>  It has not yet been determined for which geographic territory Mr. Bae will be responsible.  <u>Id.</u>

Hair Zone never previously contacted Vivace regarding Mr. Bae working for Vivace prior to filing these lawsuits.  <u>Id.</u>, ¶8.  However, as noted, Vivace has not yet assigned territories to any members of its sales team.  <u>Id.</u>  When it does so, Vivace will limit the sales responsibilities of Mr. Bae to areas outside of the New York City metropolitan area for a reasonable period of time.  <u>Id.</u>  Had Hair Zone contacted Vivace before filing their lawsuits Vivace would have informed Hair Zone of this.  <u>Id.</u>

**C.   Vivace Has Not Used Any Hair Zone Confidential Information**

Vivace has not used any of the information or documents referenced in Hair Zone's complaint in any way.  <u>Id.</u>, ¶9; Bae Decl., ¶6.  In addition, such documents and information would not be considered confidential.  Kim Decl., ¶9 Bae Decl., ¶¶6.  For example, much of the pricing information referred to in the complaint is commonly provided to customers by companies in the industry.  <u>Id.</u>  Information regarding Hair Zone's customer list is published by Hair Zone on its website. Declaration of Vincent N. Avallone, Exhibits B and C.

The information contained in the documents referenced in the complaint would not be useful to Vivace.  Kim Decl., ¶11.  Vivace has access to better, more

- 4 -

detailed, and more relevant information regarding potential customers and pricing from its business partner, Kiss Nail Products, Inc. ("Kiss").  Id.  Kiss has been a leading supplier of beauty products in the United States of America for decades.  Id.  For instance, Kiss sells artificial nails, falsies (eyelashes), hair color products, hair tools and accessories such as hair brushes, wrap scarfs, bonnets and caps.  Id.  Kiss already possesses data regarding potential customers, product pricing and other subjects relevant to Vivace that Vivace will be able to utilize.  Id.  Accordingly, Vivace would not have any need for any such information from Hair Zone.  Id.

Vivace has instructed Mr. Bae that under no circumstances should he disclose to anyone at Vivace, or use on Vivace's behalf, any confidential information or materials belonging to any previous employer or other third party.  Id., ¶14.  Mr. Bae has assured Vivace that he has not used, and will not use, any confidential information from Hair Zone in the course of performing his duties for Vivace.  Id., ¶15.

**D.    Hair Zone Never Contacted Vivace or Mr. Bae Prior to Filing the Instant Lawsuit**

Hair Zone never contacted Vivace concerning Mr. Bae's alleged possession of confidential information from Hair Zone.  Id., ¶12.  Hair Zone never sent a letter, made a phone call or sent an email to Vivace.  Id.  Hair Zone never contacted Mr. Bae prior to filing this lawsuit.  Bae Decl., ¶7.  Had Hair Zone

- 5 -

reached out to the Defendants prior to filing this lawsuit, the Defendants would have taken reasonable steps to make sure that they did not possess or use any confidential information of Hair Zone.  Id.; Kim Decl., ¶12.  On July 7, 2023, Vivace's legal counsel informed Hair Zone's counsel that Vivace was prepared to take those steps right away but Hair Zone's counsel requested that Vivace not take any such steps at this time.  Kim Decl., ¶12

### E.    Hair Zone Requires Mr. Bae to Sign a "Confidentiality Agreement"

Prior to joining Vivace in March 2023, Mr. Bae worked for Hair Zone as a sales representative.  Bae Decl., ¶4.  The sales territory for which Mr. Bae was responsible during his final five years of employment with Hair Zone was the States of New Jersey and Delaware.  Id.  For the three years prior to that, his sales territory was the District of Columbia and the States of Virginia and Maryland.  Id.

Prior to beginning employment with Hair Zone in 2007, Mr. Bae was required to sign a document entitled "Confidentiality Agreement."  Id., ¶5.  He did not read this document carefully before signing it.  Mr. Bae was told that he was required to sign it so he did so.  Id.  The contents of the document were not explained to him and he was not given an opportunity to consult with an attorney, or anyone else, prior to signing.  Id.

### F.    Hair Zone's Claims that Mr. Bae Possesses its Confidential Information are Meritless

- 6 -

Mr. Bae has never used on behalf of Vivace any of the information in any of the documents attached to the Declaration of Louis Choi.  Id., ¶6.  The names, addresses, telephone numbers and employees of beauty supply stores is not confidential information as this information is publicly available. Id.  Similarly, pricing information for the products that Hair Zone sells is not confidential and is provided to customers.  Id.  For instance, the documents attached as Exhibits E, F and G to Mr. Choi's declaration were provided to customers by Hair Zone.  Id.

## LEGAL ARGUMENT

## HAIR ZONE IS NOT ENTITLED TO A TRO

**A.    Hair Zone Cannot Demonstrate By Clear and Convincing Evidence Any of the Requirements for Temporary Restraints**

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'"  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (citing Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)).  Before the extraordinary relief of a temporary restraining order can be entertained, the plaintiff must supply specific facts in an affidavit or verified complaint demonstrating good and sufficient reasons why emergency relief is necessary.  See Bryan v. Nolan, 2009 WL 2843902 at *2 (D.N.J. Sept. 1, 2009).  "No order to show cause to bring on a matter for hearing will be granted except on a clear and

- 7 -

specific showing by affidavit or verified pleading of good and sufficient reasons

which shall issue in accordance with Federal Rule Civ. P. 4." L. Civ. R. 65.1(a).

Generally, in determining whether to grant a temporary restraining order,

courts consider four factors:

> (1) the likelihood that the applicant will prevail on the merits at final
> hearing; (2) the extent to which the plaintiffs are being irreparably
> harmed by the conduct complained of; (3) the extent to which the
> defendants will suffer irreparable harm if the preliminary injunction
> is issued; and (4) the public interest.

S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing

Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)).

"All four factors should favor preliminary relief before the injunction will issue."

S & R Corp., 968 F.2d at 374 (citing Hoxworth, 903 F.2d at 192).  Here, a TRO

should not issue because Hair Zone has not provided clear and convincing

evidence to demonstrate even one of these factors.

**B.      Hair Zone Has Not Established a Likelihood of Success on the  Merits**

Hair Zone's application for a TRO should be denied because it cannot

establish a likelihood of success on the merits.

> **i.      Hair Zone is Not Likely To Succeed on its Misappropriation of Trade Secrets
> Claims (Counts One and Two)**

Because the statutory schemes of the NJTSA and DTSA are "substantially

similar as a whole," courts often combine the analyses of the two schemes.

Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 905 n.11 (3d Cir. 2021). The

- 8 -

315949046.1

Third Circuit has described the elements of NJTSA and DTSA claims as: (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret. Id. at 905.

The party who asserts the trade secret bears the burden of proving that the information is a secret and not a matter of general knowledge in the industry. Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 431 (3d Cir. 1982). "To plead the existence of a trade secret," a plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." Oakwood Labs, 999 F.3d at 905.

Here, Hair Zone will not be able to prove that any of the information identified in its Complaint is protectable as a trade secret under either the DTSA or NJTSA. Pricing information for the products that Hair Zone sells is not confidential and is provided to customers. For instance, the documents at Exhibits E, F and G attached to Mr. Choi's declaration were provided to customers. Bae Decl., ¶6. Similarly, documents containing the names, addresses,

- 9 -

315949046.1

telephone numbers and employees of beauty supply stores are not confidential because this information is publicly available and published by Hair Zone on its website.

Because Hair Zone cannot show that any of the documents possessed by Mr. Bae constitute trade secrets, it is unlikely to succeed on the merits of its DTSA and NJTSA claims.

### ii.    Hair Zone is Not Likely To Succeed on its Breach of Contract Claim (Count Three)

Count Three is a claim against Mr. Bae for breach of the Confidentiality Agreement.  To establish a *prima facie* case of breach of contract, a plaintiff must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 203 (3d Cir. 2007).

Hair Zone does not allege that it has suffered any damages as a result of Mr. Bae's alleged breaches.  Indeed, Hair Zone does not – and cannot – allege that Mr. Bae even used any of the information it alleges he took.  This would be impossible given that Vivace has not yet sold a single product. Instead, Hair Zone claims that Mr. Bae is "primed" to use the information in the documents attached to the Choi Declaration.  Moving Br. at 24.  This speculation is not sufficient to establish that Hair Zone has actually suffered any damages.

- 10 -

Because Hair Zone will be unable to establish any damages caused by Mr. Bae's alleged breaches of the Confidentiality Agreement, Hair Zone is unlikely to succeed on the merits of its breach of contract claim.

### iii.   Hair Zone is Not Likely To Succeed on its Claim for a Breach of the Duty of Loyalty (Count Four)

In order to state a claim for breach of the duty of loyalty under New Jersey law, a plaintiff must allege (1) the existence of an employer-employee relationship, (2) breach of the duty of loyalty, and (3) resulting harm to the plaintiff. Canon Financial Services, Inc. v. Bray, 2015 WL 851816, at *4 (D.N.J. Feb. 26, 2015) (citing Cameco, Inc. v. Gedicke, 157 N.J. 504, 516–18 (1999)). Adequately pleading this cause of action requires a plaintiff "to plead resulting harm to the plaintiff." Id. Hair Zone's brief in support of its motion for a TRO does not even address the issue of alleged damages with respect to its duty of loyalty claim while in its Complaint, Hair Zone merely states, in conclusory fashion that it "has suffered damages" without providing any further factual detail.

Because Hair Zone will be unable to show any harm resulting from Mr. Bae's purported breach of his duty of loyalty, Hair Zone is not likely to succeed on the merits of its breach of the duty of loyalty claim. See e.g., Canon, 2015 WL 851816 at *5 (granting motion to dismiss duty of loyalty claim where

- 11 -

"Nowhere in the Amended Complaint does [the plaintiff] detail how [the defendant's] conduct actually caused [the plaintiff] harm").

   iv.   **Hair Zone is Not Likely To Succeed on its Unfair Competition Claim (Count Five)**

Hair Zone does not even address its unfair competition claim in its moving brief.  In its Complaint, it states that the basis of its claim is that Vivace's "unscrupulous commercial tactics" were calculated to "prevent Hair Zone from providing competitive pricing for its products."  Hair Zone does not explain how anything Vivace is alleged to have done would prevent Hair Zone from providing competitive pricing.  This is because Vivace has not done any such thing.

Moreover, to date, Vivace has not sold any products, it has not accepted any orders from any customers for any products and it has not executed any contracts or other agreements with customers.  Kim Decl, ¶3.  Vivace does not have any inventory of products to sell yet and it has not finalized or set any prices for any of the products that it plans to sell.  Id.  A company that has not even begun to do business cannot be unfairly competing.  For these reasons, Hair Zone is unlikely to succeed on the merits of its unfair competition claim.

   v.   **Hair Zone is Not Likely To Succeed on its Tortious Interference Claim (Count Six)**

Under New Jersey law, the four elements of a claim for tortious interference with business relations are:  (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with

- 12 -

malice, (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages.  Varrallo v. Hammond, Inc., 94 F.3d 842, 848 (3d Cir.1996).

Here, Hair Zone has not adequately plead any of these elements and this claim is not even addressed in its brief in support of its TRO application.  Given that Vivace has not sold any products, it has not accepted any orders from any customers for any products and it has not executed any contracts or other agreements with customers, Vivace could not have interfered in any way with Hair Zone's business relations or caused Hair Zone to lose any prospective gain.  Thus, Hair Zone is not likely to prevail on the elements of its tortious interference claim.

### vi.    Hair Zone is Not Likely To Succeed on its Claim for Breach of Mr. Bae's Restrictive Covenants (Count Seven)

The Confidentiality Agreement states that it is governed by the laws of New York and New Jersey.  Under both New York and New Jersey law, restrictive covenants are enforceable only to the extent they are reasonable.  See Karlin v. Weinberg, 77 N.J. 408, 417 (1978); BDO Seidman v. Hirshberg, 993 N.Y.2d 382 (N.Y. 1999).  Under the laws of both states a restrictive covenant is reasonable only if: (a) it is necessary to protect the legitimate interests of the employer; (b) it imposes no undue hardship on the former employee; and (c) it is not injurious to the public.  Id.; Solari Industries v. Malady, 55 N.J. 571, 576

- 13 -

(1970); <u>Whitmyer, Bros., Inc. v. Doyle</u>, 58 N.J. 25, 33-34 (1971).  Moreover, the burden of proving reasonableness "continues to fall squarely on employers precisely because of the continuing public policy concerns engendered by these restraints of trade."  <u>Maw v. Advanced Clinical Comm., Inc.</u>, 179 N.J. 439, 457 (2004); <u>see also</u> <u>Brown & Brown, Inc. v Johnson</u>, 12 N.Y.S. 3d 606, 610 (N.Y. 2015).

Here, the non-competition provision of the Confidentiality Agreement purport to restrain Mr. Bae from competing with Hair Zone for two years "within the New York City Metropolitan Area," but that term is not defined in the Agreement.  Given that Vivace is in New Jersey, Hair Zone apparently argues that the New York City Metropolitan Area includes New Jersey but there is no reason why that should be so.

To the extent there is an ambiguity regarding the scope of the non-competition provision, the Confidentiality Agreement must be strictly construed against its drafter, Hair Zone. <u>Corporate Synergies Group, LLC v. Andrews</u>, 775 Fed. Appx. 54, 56 (3d Cir. 2019) (construing the terms of a restrictive covenant against the employer who had drafted it); <u>East Brunswick Bd. of Educ. v. GCA Services Group, Inc.</u>, 2014 WL 4384541, at *8 (D.N.J. Sept. 4, 2014) ("if a contract is ambiguous, as a general matter, it is strictly construed against the draftsman").

- 14 -

Here, it is certainly reasonable to interpret the "New York City Metropolitan Area" as including only New York City or only areas within New York State.  If the ambiguous term "New York City Metropolitan Area" is construed against Hair Zone and is defined so as not to include New Jersey, the Confidentiality Agreement would not prevent Mr. Bae from working in New Jersey.  Accordingly, Hair Zone's claim for breach of the non-competition provisions of the Confidentiality Agreement fails on that basis.

However, even if the geographic scope of the non-competition provisions included parts of New Jersey, Mr. Bae still has not breached these provisions.

The two sentences of the non-compete provision state in pertinent part:

1. You agree not to compete with the business of [Hair Zone]…for a period of two (2) years from the date of your termination…within the New York City Metropolitan Area.

2. For the said two (2) year period within the New York City Metropolitan Area, you agree not to direct or indirectly own, be employed by, work for, work with, or work on behalf of anyone or firm engaged in the business of wigs, hair pieces, hair attachments, braids or any other product related to wigs or artificial hair.

Sentence one merely prevents Mr. Bae from competing within the New York City Metropolitan Area.  He has not done so and will not be doing so for a reasonable period of time given that Vivace has not sold any products and Mr. Bae will be assigned sales responsibilities for Vivace outside of the "New York City Metropolitan Area" when Vivace begins to sell products.

- 15 -

Similarly, Mr. Bae has not breached sentence two because Vivace is not yet "engaged in the business of wigs," etc.  It has not made any sales, has no customers and has no inventory of products to even sell.  It is preparing to do business but is not yet "engaged in the business of wigs" etc.

Moreover, sentence two is overbroad because it prohibits Mr. Bae from doing things with a competitor that do not protect any legitimate interest of Hair Zone.  For instance, it prohibits him from performing janitorial services for a competitor. It also prohibits him from working for a business that sells competing and non-competing products even if the work he will perform relates to the non-competing products.  There is no legitimate interest to be served by preventing all types of employment with any company that happens to sell competing products.  See e.g, Sunbelt Rentals, Inc. v. Love, 2021 WL 82370, at *19 (D.N.J. Jan. 11, 2021) (noting that whether a non-compete permitted "working for a competitor in a non-competitive role" was an important consideration in determining whether a non-compete was overbroad).

Further, there is no blue pencil provision in the agreement, which means that the parties did not intend for a Court to modify overbroad provisions to make them reasonable. Under New York law, there is no requirement for a court to modify an overbroad restrictive covenant.  Scott, Stackrow & Co. C.P.A.s v. Skavina, 780 N.Y.S.2d 675, 677-78 (3d Dep't 2004).  Even if the Court did modify the

- 16 -

overbroad provision, it could not make a better contract for Hair Zone than the one it required Mr. Bae to sign.  See Connecticut General Life Ins. Co. v. Punia, 884 F. Supp. 148, 152 (D.N.J. 2005) ("The court has no right to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently.  Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of another.").  Therefore, the most the Court could do is modify the overbroad provision to prohibit Mr. Bae from selling competing products in the restricted territory – the "New York City Metropolitan Area."  Mr. Bae has not done that and does not intend to do that, either directly or indirectly, for a reasonable period.

Hair Zone argues that the non-competition provision restricts work for a competitor based in the "New York City Metropolitan Area" regardless of the geographic location of the work being performed by the former employee.  The contract says no such thing and this interpretation makes no sense.  Moreover, as noted, to the extent there is an ambiguity regarding the scope of the non-competition provision, the Confidentiality Agreement must be strictly construed against its drafter, Hair Zone.

Further, the non-compete provision is clearly aimed at stifling competition rather than protecting Hair Zone's legitimate interests.  As an initial matter, Mr.

- 17 -

315949046.1

Bae was never responsible for making any sales in New York while he was employed at Hair Zone.  Bae Decl., ¶4.  Thus, restricting him from competing anywhere in the "New York City Metropolitan Area" is not reasonable and is not necessary to protect any legitimate interests of Hair Zone.

To date, Mr. Bae has not competed against Hair Zone because Vivace has not yet engaged in any business.  In other words, Vivace itself has not competed in the marketplace so Mr. Bae can not have done so on Vivace's behalf.  In addition, Vivace has not yet assigned territories to any members of its sales team.  Kim Decl., ¶8.  When it does so, Vivace will limit the sales responsibilities of Mr. Bae to areas outside of the "New York City Metropolitan Area" for a reasonable period of time.  Id.  Thus, even when Vivace begins doing business, Mr. Bae will not be competing with Hair Zone within the "New York City Metropolitan Area."

Simply put, there has been no breach of the non-competition provision and there will be no breach of this provision. Thus, Hair Zone is not likely to succeed on the merits of its claims for breach of the non-competition provision of the Confidentiality Agreement.

      **vii.**    **A "Faithless Servant" Claim is not Cognizable Under New Jersey Law (Count Eight)**

The faithless servant doctrine states that an agent is not entitled to compensation "for conduct which is disobedient or which [constitutes] a breach of his duty of loyalty."  <u>Tiger Supplies Inc. v. MAV Associates LLC</u>, 2022 WL

1830796, at \*10 (D.N.J. June 3, 2022).  New Jersey courts apply a duty of loyalty analysis to determine whether one acted as a faithless servant and, therefore, there is no independent "faithless servant" cause of action under New Jersey law. Id. (citing Schweikert v. Baxter Healthcare Corp., 2015 WL 4578443, at \*23 (D.N.J. Jul. 29, 2015) ("the Court's independent review of New Jersey law reveals no cases applying the faithless servant doctrine. As such, the Court concludes that the faithless servant doctrine has no basis in New Jersey law").

Thus, Hair Zone is not likely to succeed on the merits of its faithless servant claim because such a claim is not cognizable under New Jersey law.

**C.     Injunctive Relief is Not Needed to Prevent Irreparable Harm.**

The requested TRO is not necessary to prevent irreparable harm.  To prove irreparable harm, Hair Zone must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (quoting Instant Air Freight Co., 882 F.2d at 801).   "Economic loss does not constitute irreparable harm." Acierno, 40 F.3d at 653.  "[T]he injury created by a failure to issue the requested injunction must 'be of a peculiar nature, so that compensation in money cannot atone for it."  Id.  "The word irreparable connotes that which cannot be repaired, retrieved, put down again [or] atoned for."  Id. (internal citations and quotations omitted).

- 19 -

In addition, the claimed injury cannot merely be possible, speculative, or remote.  Id. at 655.  "More than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'"  Id. (quoting Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358 (3d Cir. 1980)).

Here, Hair Zone has not come close to showing that a TRO is needed to prevent irreparable harm.  The Defendants are prepared to take reasonable steps to return any Hair Zone information in their possession and would have done so by now if Hair Zone contacted them before filing this lawsuit.  Further, there are no allegations that either of the Defendants have made any use of any of the information allegedly in their possession.  Indeed, they could not have done so given that Vivace has not sold any products, it has not accepted any orders from any customers for any products and it has not executed any contracts or other agreements with customers.  Kim Decl., ¶3.  Hair Zone has not identified any harm, let alone irreparable harm, that it will suffer absent a TRO.

Even more alarming is how long Hair Zone waited before seeking to prevent what it calls irreparable harm. Mr. Bae began work at Vivace 4 months ago. Hair Zone admits that it has known that Mr. Bae has been working at Vivace

- 20 -

since April 2023 (Compl., ¶¶55) yet Hair Zone never contacted Mr. Bae or Vivace, regarding what they now claim are "thefts" and violations of the Confidentiality Agreement.  Instead, they waited months, until Vivace is just about ready to enter the marketplace, and surprised Mr. Bae and Vivace with this lawsuit.  This gamesmanship belies any claim by Hair Zone that there is any risk of irreparable harm absent temporary restraints.  See e.g., Wurth USA, Inc. v. Thompson, 2021 WL 5866899, at *1-2 (D.N.J. Dec. 10, 2021) (denying an employer's request for a TRO against several former employees for alleged violation of their non-compete agreements and finding that the employer's delay of several months in seeking a TRO "demonstrates that it will not suffer irreparable injury by proceeding in the normal course of litigation without emergency relief"); see also Commc'ns Workers of Am. v. Alcatel-Lucent USA Inc., 2015 WL 7573206, at *3 (D.N.J. Nov. 25, 2015) (finding that TRO applicants' two-month "delay in bringing th[e] action undercut[ ] their claim of irreparable harm"); Westchester Fire Ins. Co. v. Glob. Real Const., LLC, 2009 WL 137414, at *2 (D.N.J. Jan. 20, 2009) (declining to grant a TRO given the applicant's "relatively leisurely pace").

Accordingly, Hair Zone cannot establish that it will suffer any "irreparable" harm absent temporary restraints.

315949046.1

**D.      The Balancing of the Hardships and the Public Interest Favor Defendants**

Finally, the balancing of hardships warrants denial of the TRO.  As set forth in Part C above, the absence of temporary restraints will result in no irreparable harm to Hair Zone.  On the other hand, the imposition of a TRO would work a great hardship to Defendants.  Vivace, a company with only 25 employees, would be forced to make its entry into the marketplace without one of its employees.  Mr. Bae would also suffer great hardship because he would be unable to earn a living while the restraints remain in effect.  Accordingly, the balancing of the hardships requires denial of temporary restraints.

## <u>CONCLUSION</u>

For each of the foregoing reasons, Defendants respectfully request that the Court deny Hair Zone's application for a TRO.

Respectfully submitted,

**K&L GATES LLP**

By:    <u>s/Vincent N. Avallone</u>
        Vincent N. Avallone
        One Newark Center - Tenth Floor
        Newark, New Jersey 07102
        (973) 848-4000
        vincent.avallone@klgates.com
        *Attorneys for Defendants*

Dated:  July 10, 2023

- 22 -